# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
(Filed:  March 19, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | UNPUBLISHED |
| MOHAMED EDOO and JULIET EDOO, | * | |
| parents of J.E., a minor, | * | |
| | * | No. 13-302V |
| Petitioners, | * | |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Dismissal Decision; Failure to Comply with |
| AND HUMAN SERVICES, | * | Order to Show Cause; Failure to Provide |
| | * | Evidence; Failure to Prosecute |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * | | |

Walter Samuel Holland, W. Sam Holland, Esq., Miami, FL, for petitioners.
Linda Sara Renzi, U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION[1]

On April 30, 2013, Mohamed Edoo and Juliet Edoo ("petitioners"), as the parents and natural guardians of J.E., a minor, filed a petition pursuant to the National Vaccine Injury Compensation Program ("the Act").[2]  42 U.S.C. §§300aa-1 to -34 (2006).  Petitioners alleged that J.E. sustained injuries, including Pervasive Development Disorder (PDD-NOS) and Acute Disseminated Encephalomyelitis (ADEM), resulting from adverse effects of the DTP/HIB and OPV vaccinations received on April 14, 1997, and the re-administered vaccination of DTP/HIB vaccination received on July 7, 1997, both of which likely aggravated an ongoing neurological condition and possibly an underlying mitochondrial dysfunction.  Petition ("Pet.") at 1.  Based

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to redact medical or other information, that satisfies the criteria in § 300aa-12(d)(4)(B).  Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be redacted from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act).  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

on all the reasons set forth below and in the Show Cause Order dated September 19, 2013, and for failure to comply with the Show Cause Order, the undersigned dismisses the case for failure to provide sufficient evidence and for failure to prosecute.

## I.  Factual Background

J.E. was born on October 26, 1996, and was the product of a full-term pregnancy complicated by gestational diabetes.  Pet. at 2.  On April 14, 1997, J.E. received the "DPT [diphtheria, pertussis, tetanus]/HIB [haemophilus influenza b] and OPV [oral polio]" vaccinations.  Id.  The petition alleges that "during the first week following his 4/14/97 vaccinations, J.E.'s rectal temperature varied between 101-103 degrees, even with the administration of Tylenol."  Id.  J.E. was characterized with "fever, extreme irritability, screaming episodes, and poor feeding."  Id. at 2-3.  Petitioners ascribed these symptoms to a temporary adverse reaction to the vaccines.  Id. at 3.

The petition alleges that one day following the April 14, 1997 vaccinations, J.E. slept most of the day, which the petitioners described as "unusual sleepiness."  Pet. at 3.  J.E.'s fever "continued as did his reluctance to food consumption."  Id.  Petitioners alleged that J.E. had a "remarkable decrease in his level of consciousness" and "no meaningful eye contact."  Id.

On June 5, 1997, J.E. was taken to the emergency room of New York Hospital Medical Center of Queens for his "unusual behavior and prolonged fever," where Mr. Edoo reported that J.E. had "fever on/off x 6 weeks."  Pet. at 4.  Petitioners alleged that prior to the April 14, 1997 vaccinations, J.E. had "no fever, chills, congestion, coughing, vomiting, diarrhea, or change in his level of consciousness" and that he was "very alert and playful."  Id.  Subsequent to the April 14, 1997 vaccinations, petitioners stated that J.E. "gradually lost the ability to make eye contact, became over-focused on objects, and seemed unaware of his environment.  This period was followed by extreme sensitivity to sounds, looking at objects through the sides of his eyes, head banging, hand flapping, and significant developmental delays."  Id.

On July 7, 1997, J.E. received the DPT/HIB combined vaccine.  Pet. at 5.  The petition alleges that the vaccine "was contraindicated, caused further insult to J.E.'s immune system, and aggravated an underlying neurological condition."  Id.

Petitioners allege that as a result of the April 14, 1997 and July 7, 1997 vaccinations, J.E. "suffered a prolonged fever and manifested symptoms of ADEM, which led to PDD-NOS, a condition from which he continues to suffer."  Pet. at 5.  Petitioners further allege that J.E. was diagnosed with these disorders in January 2000.  Id.  Petitioners specifically state that J.E. exhibited the signs of ADEM on April 14, 1997.  Pet. at 7.  The onset of J.E.'s other symptoms are set forth in further detail in the petition.

The petition also alleges that the vaccinations "aggravated a presumed underlying condition of mitochondrial dysfunction," although no specific date of the onset of this aggravation has been pled.  Id.

## II.  Procedural History

Because of the long procedural history of the case and events leading up to the filing of this petition, a more detailed review of the relevant procedural history is necessary to explain why this claim was untimely filed.

The complete procedural history is outlined in a dismissal decision filed by Chief Special Master Campbell-Smith on February 26, 2013.  See Dismissal Decision, No. 04-1795V, filed Feb. 26, 2013, at 2-5.  The relevant procedural facts are discussed infra.

On March 28, 2002, petitioners filed a complaint in the Circuit Court of the Seventeenth Circuit in Broward County, Florida, against nine defendants identified by petitioners to be "manufacturers, distributors or suppliers of thimerosal or products containing thimerosal." Dismissal Decision, No. 04-1795V, filed Feb. 26, 2013, at 2.  Petitioners alleged a number of causes of action against various defendants including a "strict liability" claim, "breach of implied warranty," "negligence in the manufacture, marketing, and/or sale of mercury-containing products," "negligence in the release of mercury-containing emissions from the burning of fossil fuels," "loss of child services, medical expenses, and negligent infliction of emotional distress," and "intentional infliction of emotional distress." Id. at 2-3.

The case was removed to the United States District Court for the Southern District of Florida on May 17, 2002.  On September 20, 2004, the district court issued an order to address "various motions to dismiss" made by some, but not all, of the vaccine defendants.  The motion moved to dismiss petitioners' amended complaint on the ground that the court "lack[ed] subject matter jurisdiction over [the] matter pursuant to the National Vaccine Injury Compensation Act." Id. at 4.  Accordingly, the district court dismissed the claims petitioners brought on behalf of the child against the vaccine defendants but stayed the claims petitioners asserted on their own behalf "pending the outcome of the proceedings in the Vaccine Court." Id.  The district court ordered the clerk of the court to "CLOSE this case until further order of the Court." Id. Accordingly, the clerk of the court administratively closed the case. Id.

On December 22, 2004, petitioners filed a vaccine claim in the Court of Federal Claims alleging that J.E. developed autism as a result of his receipt of thimerosal-containing vaccines. Respondent sought dismissal of the claim on the ground that the petition was filed more than 36 months "after the first symptom or manifestation of onset of J.E.'s alleged vaccine-related injury." Dismissal Decision, No. 04-1795V, filed February 26, 2013, at 4.  Based on respondent's review of the case, "J.E. showed symptoms of his autism spectrum disorder ("ASD") as early as 1 ½ to 2 years of age" and "thus [the] petition should have been filed no later than April 26, 2002." Id. at 4-5. But, the petition "was not filed until December 22, 2004, more than 2 ½ years after the statute of limitations expired." Id.

On September 4, 2012, petitioners responded to the motion to dismiss contending that they had filed their petition timely under section 300aa-11 of the Vaccine Act because they filed their vaccine claim within one year of the closing of their federal court action. Id. at 5. Section 300aa-11 of the Vaccine Act permits, in certain circumstances, the use of the date of filing of an

earlier filed civil action for statute of limitations purposes.  Petitioners argued that the Chief Special Master should consider March 28, 2002, as the date of the filing of the vaccine petition because that is the date on which petitioners filed their state court claim.  Id.  Petitioners reasoned that because the first symptoms of J.E.'s ASD appeared in April of 1999, just less than 36 months prior to the filing of their state court claim, their petition must be considered timely filed.  Id.

On February 26, 2013, the Chief Special Master issued a decision dismissing petitioners' claim without prejudice finding that the administrative closing of petitioners' case in the federal district court did not constitute a dismissal under section 300aa-11(a)(2)(B) of the Vaccine Act.  "Thus, because petitioners' federal court action was not formally dismissed until April 2012, it was still pending at the time of filing their December 2004 petition" and thus, the court lacked jurisdiction over the vaccine petition as initially filed because it was barred under section 300aa-11(a)(5)(B).  Dismissal Decision, No. 04-1795V, filed February 26, 2013, at 5.

Petitioners filed the instant action on April 30, 2013, alleging that J.E. sustained injuries that were not alleged in their first Vaccine-Act petition, "including Pervasive Development Disorder (PDD-NOS) and Acute Disseminated Encephalomyelitis (ADEM) resulting from adverse effects of DTP/HIB/OPV vaccinations received on 4/14/1997 and the re-administered vaccination of DTP/HIB on 7/7/1997, both which likely aggravated an ongoing neurological condition and possibly an underlying mitochondrial dysfunction."  Pet. at 1.  The newly filed petition alleges that J.E.'s symptoms began on April 14, 1997.  See Pet. at 7.

An initial status conference was held on June 4, 2013.  As a result of that status conference, petitioners were ordered to file any outstanding medical records by June 25, 2013. Order, filed June 11, 2013.  On June 25, 2013, petitioners filed a motion for an extension of time until July 15, 2013.  That motion was granted.  Order, filed June 28, 2013.  But no additional medical records were filed.

Subsequently, a status conference was held on August 12, 2013.  Petitioners were asked to file a status report by August 23, 2013.  Order, filed August 12, 2013.  In that status report filed on August 23, 2013, petitioners stated that they were contacted by their counsel on August 22, 2013, and were asked which "medical records, if any, were to be filed in consideration of the case and whether the Petition of April 27, 2013, was properly pled in accordance with the historical facts as described by petitioners."  Petitioners' Status Report, dated August 23, 2013, at 2.  The status report then described that J.E. recently had several appointments with an immunologist and that he underwent genetic testing.  Id. at 2.  The status report described an upcoming appointment that J.E. has with a neurologist and stated that petitioners maintained that the 1997 vaccinations that J.E. received caused his injuries.  Id.  The status report goes on to state that the results of the genetic testing should determine whether J.E. should not have received the vaccinations in 1997.  Id.  Finally, the status report states that petitioners were informed of the 36-month statute of limitations applicable in Vaccine Act cases.  Id. at 3.

After reviewing the status report, the undersigned concluded that it was unresponsive to her August 12, 2013 order and directed petitioners to show cause as to why their case should not be dismissed as untimely by October 18, 2013.  Order, filed September 19, 2013.  Petitioners filed

an unopposed motion for extension of time until October 25, 2013, and that motion was granted. Order, filed October 22, 2013.  On October 29, 2013, petitioners' counsel contacted the court requesting extension of time until November 8, 2013.  The request was granted, and petitioners were given additional time to file their response by November 8, 2013.  Order, filed October 30, 2013.  Again, no response was filed.

On November 20, 2013, petitioners' counsel filed a motion to withdraw.  In that motion, petitioners' counsel stated that "[p]etitioners have failed to respond to the undersigned [counsel]'s inquiries regarding the Order to Show Cause" and that "[petitioners] have not responded to earlier communications." Motion to Withdraw, filed November 20, 2013, at 2.  There has been no indication from petitioners that any response to the Order to Show Cause would be forthcoming.   A status conference was held on March 6, 2014, and petitioners' counsel reiterated that petitioners have been unresponsive to his attempts to communicate with them. See Order, filed March 7, 2014.

### III. Analysis

#### A.  Applicable Statute of  Limitations in the Vaccine Program

Vaccine claims have a statute of limitations.  The Vaccine Act provides that in the case of:

a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury …."

42 U.S.C. § 300aa-16(a)(2).  However, if a petitioner:

has a pending civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death.

§ 300-11(a)(5)(B).  Contemplated in the Vaccine Act is a remedy for petitioners who file a civil action prior to filing a vaccine claim:

If a civil action which is barred under subparagraph (A) [as a vaccine claim] is filed in a State or Federal court, the court shall dismiss the action.  If a petition is filed under this section with respect to the injury or death for which such civil action was brought, the date such dismissed action was filed shall, for purposes of the limitations of actions prescribed by section 300aa-16 of this title, be considered the date the petition was filed if the petition was filed within one year of the date of dismissal of the civil action.

§ 300aa-11(a)(2)(B).

Applying this statutory law, and in light of the pending civil case in Florida state court, the Chief Special Master dismissed without prejudice petitioners' 2004 vaccine claim.  Decision, filed February 26, 2013, in Edoo v. Sec'y of Health & Human Servs., Case No. 04-1795V.

### B.  Issue of Timeliness

As written, the statute requires a petitioner to file her claim under the Vaccine Act within 36 months of the onset of the earliest symptoms of her injury.  See Markovitch v. Sec'y of Health & Human Servs., 447 F.3d 1353, 1357 (Fed. Cir. 2007) (holding that "either a 'symptom' or a 'manifestation' of onset of a vaccine-related injury is "the first event objectively recognizable as a sign of a vaccine injury by the medical professional at large."

The petition in this case was filed on April 30, 2013.  In order for petitioners' vaccine claim to be timely, J.E. would have had to experience the initial onset (or significant aggravation) of his vaccine-related injuries, as pled in the petition, on or after April 30, 2010.  Any claims for injuries prior to April 30, 2010, will be time-barred.

J.E. received the vaccinations at issue on April 14, 1997, and July 7, 1997.  Pet. at 2.  The petition alleges that J.E. developed a fever "during the first week following his 4/14/1997 vaccinations…"  Id.  He was taken to the hospital on June 5, 1997.  Id. at 4.  Petitioners alleged in their complaint that J.E. was diagnosed with ADEM and PDD-NOS in January 2000.  Assuming all these dates are correct, it appears on the face of the petition that it was untimely filed.  The onset or significant aggravation of J.E.'s claim, in order to be timely under the Vaccine Act, would have had to occur on or after April 30, 2010.

Petitioners have the burden of establishing the timely filing of their claim, and they have failed to provide evidence that their petition was filed within "36 months after the date of occurrence of the first symptom or manifestation of onset . . . of such injury" as required by the Vaccine Act.  Because petitioners have alleged injury onset in 1997, the undersigned finds it appropriate to dismiss the case for failure to establish that the petition was timely filed.

### C.  Failure to Prosecute

When a petitioner fails to comply with Court orders to prosecute her case, the Court may dismiss the case.  Sapharas v. Sec'y of Health & Human Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Human Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993) (table); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

Petitioners failed to respond to the Order to Show Cause, dated September 19, 2013, despite having been given several extensions, and have failed to respond to their counsel's attempts to communicate.  This indicates a disinterest in pursuing their claim.  Thus, as a

separate and independent ground, the undersigned finds it appropriate to dismiss the case for failure to prosecute.

**IV. Conclusion**

Accordingly, for all the reasons stated above, **this case is dismissed for insufficient evidence and for failure to prosecute.  The Clerk shall enter judgment accordingly.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master